E-FILED  -  JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

**Presiding: The Honorable**          **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers) Order re:** Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Dkt. No. 3]

          Before the Court is Plaintiff Commissions Import Export S.A.'s ("Plaintiff") "Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction" ("Ex Parte Application"), filed on April 7, 2016.  We find this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15.

**I.      Background**

          On March 23, 2016, the Court entered a Certification of a Judgment to be Registered in Another District, received from the United States District Court for the District of Columbia in civil case number 13-713 RJL.  The District of Columbia entered the Judgment in favor of Plaintiff and against Defendant Republic of the Congo ("Defendant") on October 9, 2013.  The District of Columbia's Judgment confirmed a final arbitration award issued on January 21, 2013 by the International Chamber of Commerce, International Court of Arbitration.  The District of Columbia's Judgment was entered in the amount of  €567,184,160.27 (in Euros) and $855,000 (in U.S. dollars), plus post-judgment interest.

          The underlying dispute between the parties arose when, in the 1980s, Plaintiff was engaged to perform public works, i.e., build hospitals, bridges, and roadways, for Defendant, yet Defendant failed to pay Plaintiff the promised amounts as they came due.  The parties have litigated and arbitrated their disputes since the 1990s and Plaintiff prevailed in the arbitration proceedings before the International Chamber of Commerce.  Plaintiff has initiated judicial enforcement proceedings throughout the world to enforce the awards entered in its favor, yet has been unable to recover the money it is owed by Defendant.[1]

          Plaintiff registered the District of Columbia's Judgment pursuant to 28 U.S.C. § 1963 in this

---

          [1]  Plaintiff submits the records from some of these enforcement proceedings with a Request for Judicial Notice ("RJN").  The records submitted are from proceedings between the parties before the District of Columbia as well as some appellate records.  These documents are "matters of public record," of which the Court may take judicial notice.  See Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Accordingly, we grant the RJN.

E-FILED  -  JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

District for purposes of enforcing the Judgment against Defendant's assets that are located here. Plaintiff has recently located a Boeing 787-8 aircraft, serial number 37306, Federal Aviation Administration registration number N887BA and engines, Rolls Royce Trent 1000, serial numbers 10312 and 10293 (hereinafter "the aircraft"), that is currently being stored at the Southern California Logistics Airport in Victorville, California and which Plaintiff believes belongs to Defendant. Plaintiff moves the Court for a Temporary Restraining Order ("TRO") to bar anyone, including Defendant, from moving the aircraft until, <u>inter alia</u>, Plaintiff has been able to obtain post-judgment discovery regarding the ownership of the aircraft and can move to foreclose on Defendant's interest in the aircraft.

**II.    Legal Standard[2]**

The standard for issuance of a temporary restraining order and a preliminary injunction is the same. <u>Lockheed Missile & Space Co. v. Hughes Aircraft Co.</u>, 887 F. Supp. 1320, 1323 (N.D. Cal. 2003). The movant must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008). When there are "serious questions" going to the merits and the balance of hardships tips sharply in favor of the plaintiff, we may grant preliminary injunctive relief, provided the other <u>Winter</u> elements are met. <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (2011).

**III.   Discussion**

Preliminarily, we note that Plaintiff has attempted to serve Defendant and several entities with an interest in the aircraft with a copy of the Ex Parte Application.[3] We have received only one response,

---

[2] Plaintiff's Ex Parte Application arises in the context of a post-judgment proceeding. Rule 69 of the Federal Rules of Civil Procedure provides that the process for enforcing a judgment shall be conducted in accordance with the procedures of the state in which the district court is held. Fed. R. Civ. P. 69(a). However, we evaluate whether Plaintiff is entitled to its requested relief pursuant to Federal Rule of Civil Procedure 65(b) by applying the <u>Winter</u> elements, as discussed herein. <u>See, e.g.</u>, Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, <u>but a federal statute governs to the extent it applies</u>." (emphasis added)); <u>Big Oak Golf Design, Inc. v. De Ubago</u>, No. CV-08-80107-SBA, 2009 WL 839087, at *2-3 (N.D. Cal. Mar. 30, 3009) (applying Federal Rule of Civil Procedure 65 when considering judgment creditor's application for a temporary restraining order in judgment enforcement action).

[3] According to the declarations of Plaintiff's counsel, John T. Van Geffen, Plaintiff served the following entities with a copy of the Ex Parte Application on April 11, 2016: (1) Defendant, by telephone, electronic mail, and United States mail sent to the Embassy of the Republic of Congo in Washington, D.C. and by facsimile and electronic mail sent to the head of the ministry of foreign affairs of the Republic of the Congo; (2) the Boeing Company, by telephone and United States mail sent to its agent for service of process in California; (3) the Bank of Utah, by facsimile and electronic mail sent to

E-FILED   -   **JS-6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

from Equatorial Congo Airlines S.A. ("ECAir"), which opposes the requested relief. (See Dkt. No. 20.) Accordingly, we evaluate the Ex Parte Application in light of the <u>Winter</u> elements, the evidence Plaintiff proffers in support of the requested relief, and ECAir's opposition.

Plaintiff's evidence consists of the following: title reports for the aircraft and its engines (<u>see</u> Declaration of Michael L. Dworkin ("Dworkin Decl.") ¶¶ 4-5, Exh. A-D.); all of the documents made available to Plaintiff from the registration file for the aircraft kept by the Federal Aviation Administration (hereinafter "FAA registration file") (<u>see</u> Dworkin Decl. ¶ 6, Exh. E-O); UCC financing statements between ECAir and the Bank of Utah (Dworkin Decl. ¶ 7, Exh. P); excerpts from ECAir's website (Dworkin Decl. ¶ 11, Exh. R); an article from the website www.congo-liberty.com dated January 3, 2016 (Dworkin Decl. ¶ 15, Exh. U); a letter from ECAir to Boeing dated March 2, 2015 (Dworkin Decl. ¶ 16, Exh. X; Declaration of Nicolas Najjar ("Najjar Decl.") ¶ 8, Exh. F); Order 11788, issued by the Republic of the Congo's Minister of Civil Aviation on August 19, 2011, published in the Official Journal of the Republic of the Congo (Najjar Decl. ¶ 4, Exh. A); the articles of incorporation for ECAir (Najjar Decl. ¶ 5, Exh. B); excerpts of a 2008 International Commission of the Congo-Oubangui-Sangha Basin memorandum of understanding (Najjar Decl. ¶ 5, Exh. C); Order 2011-844 published in the Official Journal of the Republic of the Congo on June 16, 2012 (Najjar Decl. ¶ 6, Exh. D); ECAir's 2014 financial statement (Najjar Decl. ¶ 7, Exh. E); and a declaration from Plaintiff's investigator about locating the aircraft with photographs of the aircraft attached (Wayne Black Declaration ("Black Decl.") at ¶¶ 5-8.).

We note that Exhibits A, C, D, and E to the Najjar Declaration are written in the French language and Plaintiff does not provide an English translation, in violation of Local Rule 11-3.10. <u>See</u> L.R. 11-3.10 (requiring that all documents filed be presented in the English language unless an English translation is concurrently provided). Accordingly, without an English translation, we are unable to consider these documents.

A.      Likelihood of Success on the Merits

---

its agent for service of process; (4) Equatorial Congo Airlines, by telephone and electronic mail; (5) Southern California Logistics Airport, by telephone and electronic mail sent to the on-duty operations manager. (See Second Van Geffen Decl. ¶¶ 6-10; Third Van Geffen Decl. ¶4.)  On April 14, 2016, Plaintiff's counsel filed the Fourth Declaration of John T. Van Geffen, in which counsel declares that he is unaware of "any applicable special arrangement for service between the parties or international convention on service of judicial documents under 28 U.S.C. § 1608(a)(1) and (2)" and that he has initiated service upon Defendant pursuant to 28 U.S.C. § 1608(a)(3) by requesting the Clerk of Court to "dispatch a package containing four copies (two in English and two translated into French, the official language of the Republic of the Congo)" of Plaintiff's Ex Parte Application by the carrier DSL. (Fourth Van Geffen Decl. ¶¶ 4-5.)

E-FILED - **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

Plaintiff argues that this factor weighs in its favor strongly because it has already prevailed on the merits in its arbitration against Defendant, giving rise to this judgment enforcement proceeding. (See Ex Parte Application at 18.)  We do not agree with Plaintiff's analysis.  Instead, in order to demonstrate a likelihood of success on the merits here, Plaintiff must show that it will prevail in showing that the aircraft is an asset owned by Defendant on which the Judgment can be enforced in this District.

We conclude that Plaintiff has not demonstrated a likelihood of success on the merits for two reasons.

1.      Ownership of the Aircraft

First, although Plaintiff presents the Court with considerable evidence with its Ex Parte Application, we agree with ECAir that the evidence shows clearly that the owner of the aircraft is the Bank of Utah, as trustee, and not Defendant.  (See Dworkin Decl. ¶¶ 4-6, Exh. A-O; ECAir Opp'n at 1-3.)  The title documents submitted as Exhibits A through D to the Dworkin Declaration show that the Bank of Utah is the registered owner of the aircraft and its two engines.  (Dworkin Decl. at Exh. A-D.)  The United States Department of Transportation's "Cross Reference-Recordation" form reflects that pursuant to the "Aircraft Security Agreement (MSN 37306)" executed on September 18, 2015, the Bank of Utah, as trustee, conveyed to the Bank of Utah, as security trustee, the aircraft and its two engines. (Id. at Exh. E.)  Plaintiff also presents a copy of the Aircraft Security Agreement (MSN 37306) and a supplement thereto that reflect the conveyance.  (Id. at Exh. F-G.)  Most importantly, Exhibit H to the Dworkin Declaration is the Beneficial Interest Pledge Agreement, in which ECAir, as pledgor, represents that it "is the sole owner, manager and member of 100% of the beneficial interest in N887BA Trust" and pledges all of its interest in the aircraft, inter alia, to the Bank of Utah, as security trustee and pledgee.  (Id. at Exh. H.)  In addition, Exhibit K to the Dworkin Declaration is the bill of sale for the aircraft, which demonstrates that, on September 18, 2015, the Boeing Company sold the aircraft directly to "Bank of Utah, not in its individual capacity, but solely as Owner Trustee under a Trust Agreement dated August 31, 2015."  (Id. at Exh. K.)  Based on Plaintiff's evidence, it appears that the aircraft is being held in a trust by the Bank of Utah for the benefit of ECAir, not Defendant.  (Id. at Exh. H.)

While Plaintiff purportedly presents evidence that ECAir is owned and operated by Defendant (see Najjar Decl. ¶¶ 3-8, Exh. A-F), as stated above, Plaintiff did not provide English translations for most of these documents so we are unable to consider them.  The only relevant document in English is Exhibit B to the Najjar Declaration, which purports to be the articles of incorporation for ECAir.  On the first page of the document, it states that Mr. Jean-Jacques Bouya is the President of the Board of Directors for ECAir and that he represents ECAir and on the last page of the document, Mr. Bouya read, approved, and signed the document.  (See Najjar Decl. ¶ 5, Exh. B.)  According to Mr. Najjar, Mr. Bouya is "a sitting member of the Republic's Parliament and Minister at the Presidency for Spacial Planning and Delegate General for Major Public Works."  (Najjar Decl. ¶ 5.)  Mr. Najjar declares that "Mr. Emile Ouosso, the Republic's Minister of Transportation and Civil Aviation" also incorporated ECAir, as reflected in the articles of incorporation.  (Id.)  We have not found any reference to Emile Ouosso in Exhibit B, but rather it appears the articles of incorporation were signed on the last page by

E-FILED - **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

"Emile Onojjo." We decline to assume for purposes of this analysis that Emile Onojjo is the same person as Emile Ouosso. The only other evidence Plaintiff presents to connect ECAir and Defendant is the Beneficial Interest Pledge Agreement, attached as Exhibit H to the Dworkin Declaration, as referenced above. In this agreement, the following term is included:

> Whereas, pursuant to (i) the guarantee dated as of September 18, 2015 from the Pledgor [defined as Equatorial Congo Airlines, S.A.] in favor of the Lenders [not defined] and (ii) the guarantee dated September 18, 2015 from the Republic of Congo in favor of the Lenders, each of the Pledgor and the Republic of Congo have agreed to guarantee the obligations of the Borrower [defined as the N887BA Trust] under the Loan Agreement [referred to as "Loan Agreement (MSN 37306)"] and the other Operative Documents [not defined].

(Dworkin Decl. at Exh. H, page 1.) While this apparently shows that both ECAir and Defendant guarantee the obligations of the borrower, it does not necessarily show that ECAir is owned and operated by Defendant. Thus, based only on Exhibit B to the Najjar Declaration and Exhibit H to the Dworkin Declaration, we decline to draw an inference in Plaintiff's favor that ECAir is owned and operated by Defendant and, thus, that Defendant has an ownership interest in the aircraft.

In any event, the Beneficial Interest Pledge Agreement between ECAir and the Bank of Utah shows that ECAir pledged its full ownership interest in the aircraft to the Bank of Utah as of September 18, 2015. (See Dworkin Decl. ¶ 6(c), Exh. H.) In other words, even assuming, *arguendo*, that Defendant owned and operated ECAir and has an ownership interest in the aircraft, any interest ECAir had in the aircraft has been pledged to the Bank of Utah. Moreover, it appears that the aircraft is subject to a loan agreement involving other parties, including RPK Africa Investments, thereby seemingly further encumbering the title to the aircraft. (Id.) The loan agreement is not in the record before the Court so we are unable to determine what impact it may have on the ownership interests in the aircraft.

Next, Plaintiff does not address this in the Ex Parte Application, but we must address whether ECAir is a separate juridical entity from Defendant. See Flatow v. Islamic Republic of Iran, 308 F.3d 1065, 1073-74 (9th Cir. 2002) (a separate juridical entity cannot be held liable for a judgment against a foreign state). ECAir argues in its opposition that it is a separate juridical entity that cannot be held liable for the Judgment entered against Defendant. (See ECAir Opp'n at 3-4.) If ECAir is a juridical entity separate and apart from Defendant, then the aircraft cannot be subject to execution for a judgment against Defendant. See Flatow, 308 F.3d at 1073-74. As discussed above, Plaintiff presents evidence to suggest that ECAir is not a juridical entity distinct from Defendant (see Najjar Decl. ¶¶ 3-8, Exh. A-F), but we have not been able to consider that evidence because it is not translated into English. See L.R. 11-3.10. The only evidence linking ECAir and Defendant that we may consider are Exhibit B to the Najjar Declaration and Exhibit H to the Dworkin Declaration and we have already found these documents provide an insufficient basis upon which we may infer that ECAir is owned and operated by Defendant. In any event, simply proving that ECAir is wholly owned by Defendant is insufficient for Plaintiff to enforce the Judgment against the aircraft being held in a trust for the benefit of ECAir. See, e.g., De Letelier v. Republic of Chile, 748 F.2d 790, 799 (2nd Cir. 1984) (barring execution of judgment against the state on aircraft assets of airline wholly owned by the state because the airline was a separate

E-FILED  -  **JS-6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

juridical entity); Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 565 (11th Cir. 1987) (concluding that the district court erred "in holding that Argentina's 100% ownership of Aerolineas' stock was sufficient to overcome the presumption of separate juridical existence"). In order to reach ECAir's assets to collect upon the Judgment entered against Defendant, Plaintiff must show that Defendant abused the corporate form or ECAir's corporate status works a fraud. See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 629-30 (1983). Plaintiff has not made such a showing; thus, Plaintiff has not overcome "the presumption of independent and separate legal status" afforded to entities like ECAir in the Ninth Circuit. See Flatow, 308 F.3d at 1070 ("even though an entity or instrumentality is wholly-owned by a foreign state, that entity is accorded the presumption of independent and separate legal status.").

Based on the record before the Court, it is not clear that Defendant holds an ownership interest in the aircraft that Plaintiff may "foreclose upon" in these proceedings. (See Ex Parte Application at 19 ("Plaintiff seeks to keep the status quo until it can move forward with a Preliminary Injunction or foreclosure of the aircraft.").) Without demonstrating that Defendant has an ownership interest in the aircraft, Plaintiff cannot demonstrate a likelihood of success on the merits in this judgment enforcement proceeding.

2.      Foreign Sovereign Immunities Act

Second, even if Plaintiff had provided sufficient evidence to convince us that Defendant owns or has an interest in the aircraft, Plaintiff has not demonstrated that the aircraft is subject to enforcement here, consistent with the Foreign Sovereign Immunities Act ("FSIA").

Plaintiff argues that Defendant "is not entitled to sovereign immunity under 28 U.S.C. § 1605, because this case falls under the exception for cases brought to confirm arbitration awards" pursuant to 28 U.S.C. § 1605(a)(6). (Ex Parte Application at 13.) In the alternative, Plaintiff argues that Defendant "unconditionally and wholly waived sovereign immunity in its agreements with Plaintiff." (Id.)

"Sovereign immunity is a doctrine of international law under which domestic courts, in appropriate cases, relinquish jurisdiction over a foreign state." H.R. Rep. No. 94-1487, at 8 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6606. Prior to the enactment of the FSIA, "a foreign state in our courts enjoy[ed] absolute immunity." Id.; see also Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486 (1983) ("For more than a century and a half, the United States generally granted foreign sovereigns complete immunity from suit in the courts of this country."). In 1976, Congress passed the FSIA, "a comprehensive statute containing a 'set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities.'" Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004) (citation omitted). The FSIA codified a "restrictive principle" that "recognized immunity for public acts, that is to say, acts of a governmental nature typically performed by a foreign state, but not for acts of a private nature even though undertaken by a foreign state." Cassirer v. Kingdom of Spain, 616 F.3d 1019, 1026 (9th Cir. 2010).

The FSIA "contains two primary forms of immunity." Rubin v. Islamic Republic of Iran, 637

E-FILED  -  JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

F.3d 783, 793 (7th Cir. 2011) (examining both jurisdictional and execution immunity). Pursuant to 28 U.S.C. § 1604, a foreign state is generally granted jurisdictional immunity from suit. The other primary form of immunity is codified under 28 U.S.C. § 1609, which provides that "the property in the United States of a foreign state shall be immune from attachment[,] arrest[,] and execution . . . ." 28 U.S.C. § 1609. The FSIA, however, "carves out certain exceptions to its general grant of immunity." Altmann, 541 U.S. at 691. "Unless a specified exception to foreign sovereign immunity applies, [a] court lacks jurisdiction." Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1122 (9th Cir. 2010). Thus, the FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).

Pursuant to Section 1610 of the FSIA, "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act if" certain conditions are present. 28 U.S.C. § 1610(a). Relevant here, such conditions include the following: "(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or . . . (6) the judgment is based on an order confirming an arbitration award rendered against a foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitration agreement . . . ." 28 U.S.C. § 1610(a)(1), (6).

Although Sections 1609 and 1610 state that immunity from attachment or execution generally exists for foreign states aside from certain exceptions, "[t]hey are silent as to who has the burden of pleading and proving immunity from execution." Peterson, 627 F.3d at 1124. The Ninth Circuit, however, has provided clarification. See id. at 1127-28. The Ninth Circuit adopted a "burden-shifting approach" that "[r]equir[es] the plaintiff to prove that immunity does not exist, rather than [one that] plac[es] the burden on the defendant foreign state." Id. (holding that the burden-shifting approach to foreign sovereign immunity from suit also applies to immunity from execution). Under the burden-shifting approach, there is a statutory presumption of immunity from attachment or execution "if it is apparent from the pleadings or uncontested that the defendant is a foreign state." Id. at 1125. "Once the court has determined that the defendant is a foreign state, 'the burden of production shifts to the plaintiff to offer evidence that an exception applies.'" Id. "If the plaintiff satisfies [its] burden of production," then "the defendant [must] demonstrate[ ]by a preponderance of the evidence that the claimed exception does not apply." Id. In applying the burden-shifting framework, a district court must heed the Ninth Circuit's instruction that "the exceptions to immunity from execution are more narrow than the exceptions from immunity from suit." Id. at 1128. This is because "Congress fully intended to create rights without remedies, aware that plaintiffs would often have to rely on foreign states to voluntarily comply with U.S. court judgments." Id. Therefore, "courts [must] proceed carefully in enforcement actions against foreign states and consider the issue of immunity from execution *sua sponte*." Id.

Here, it is apparent that Defendant is a foreign state. Therefore, a statutory presumption of immunity exists, and the burden of production shifts to Plaintiff to offer evidence that an enumerated

E-FILED  -  **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

exception under Section 1610(a) applies.  See Peterson, 627 F.3d at 1125.  While it appears either Section 1610(a)(1) or (6) could apply here, Plaintiff cannot meet its burden because the evidence presently before the Court does not show that the aircraft is being "used for" commercial activity in the United States.[4]

 In Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1087 (9th Cir. 2007), the Ninth Circuit defined the precise meaning of "used for" in Section 1610(a).  It adopted a narrow construction and held that a property is "used for commercial activity" "when the property in question is put into action, put into service, availed or employed *for* a commercial activity, not *in connection* with a commercial activity or in relation to a commercial activity."  Id. at 1091 (emphasis in original).  Moreover, the property must be in "active employment for commercial purposes" at the time the writ of attachment or execution is sought.  See id. at 1088 (determining that a property may not be executed upon if it "merely [has] a passive, passing, or past connection to commerce"); Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 130 (2d Cir. 2009) ("[T]he property that is subject to attachment and execution . . . must have been 'used for a commercial activity' at the time the writ of attachment or execution is issued.").  The Ninth Circuit determined that its narrow construction of "used for" was well supported by both the legislative history and statutory structure of the FSIA.  See Af-Cap, Inc., 475 F.3d at 1088-89; see also H.R. Rep. No. 94-1487, at 28, 1976 U.S.C.C.A.N. at 6627 ("The property in question must be used for a commercial activity in the United States.").  The Ninth Circuit also found that "a pivotal purpose of the FSIA[ ][is] to limit execution against property directly belonging to a foreign state."  Af-Cap, Inc., 475 F.3d at 1089.

 In Colella v. Republic of Argentina, No. C07-80084, 2007 WL 1545204, at *5-7 (N.D. Cal. May 29, 2007), the plaintiffs sought to execute upon Argentina's property to satisfy a judgment obtained against Argentina, which had defaulted on the plaintiffs' bonds in December 2001.  Id. at *1.  The plaintiffs applied for a writ of execution on a Boeing 757 airplane owned by Argentina to transport its

---

 [4] It is possible that Plaintiff could argue that an exception pursuant to Section 1610(b) applies to the aircraft.  See De Letelier v. Republic of Chile, 748 F.2d 790, 798-99 (2d Cir. 1984) ("The FSIA distinguishes between execution against property of an agency or instrumentality of a foreign state, which may be executed against regardless of whether the property was used for the activity on which the claim is based under § 1610(b)(2), and the property of the foreign state itself, which may be executed against only when the property was used for the commercial activity on which the claim is based under § 1610(a)(2).  In so distinguishing, Congress sharply restricted immunity from execution against agencies and instrumentalities, but was more cautious when lifting immunity from execution against property owned by the State itself.").  However, that provision applies to property held in the United States by "an agency or instrumentality of a foreign state" and not the foreign state itself, which is inconsistent with Plaintiff's present position that Defendant owns the aircraft.  28 U.S.C. § 1610(b).  Moreover, as discussed supra, even if Plaintiff were to argue that ECAir is an "agency or instrumentality" of Defendant, in order to reach ECAir's assets to collect upon the Judgment entered against Defendant, Plaintiff must show that Defendant abused the corporate form or ECAir's corporate status works a fraud.  See First Nat'l City Bank, 462 U.S. at 629-30.  Plaintiff has not made such a showing.

E-FILED  -  **JS-6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

president. Id. The airplane had been flown into the United States for service and maintenance. Id. at *5. The court held that the airplane was immune from execution because it was not being "used for" commercial activity in the United States. Id. The "[air]plane need[ed] to be maintained and serviced, but it [was] not 'used for' maintenance and service." Id. at *6. Thus, the airplane only had a "passing connection" to commerce and could not qualify under Section 1610(a). Id. In addition, the court found persuasive the fact that the airplane was used only to transport the president in his official capacity, which demonstrated that the airplane was "employed for strictly non-commercial activities." Id.

Here, the only relevant evidence before us shows that the aircraft is not being used and is simply being stored at the Southern California Logistics Airport. Plaintiff's investigator, Wayne Black, declares that neither he nor anyone in his employ has witnessed anyone working on the aircraft, preparing it for flight, or moving the aircraft since they began monitoring it. (See Black Decl. at ¶¶ 5-8.) Even if the aircraft is being serviced or maintained while being stored,[5] as implied by Exhibit X to the Dworkin Declaration, this alone does not show that it is being "used for" commercial activity. See Colella, 2007 WL 1545204, at *5-7. Thus, we cannot conclude that the aircraft is being "used for" a commercial activity and Plaintiff cannot meet the Ninth Circuit's narrow construction.[6] 28 U.S.C. § 1610(a). Thus, it appears that the aircraft is immune from execution, at least based on the record presently before the Court.

For the foregoing reasons, we conclude that Plaintiff has not demonstrated a likelihood of success on the merits with respect to enforcing the Judgment against the aircraft. Accordingly, we need not address the remaining Winter elements, as Plaintiff must demonstrate each of the four elements in order to be entitled to the requested relief. Winter, 555 U.S. at 20; Alliance for Wild Rockies, 632 F.3d at 1134-35.

## IV.   Conclusion

For the foregoing reasons, the Ex Parte Application is **DENIED**.

**IT IS SO ORDERED.**

--_____  :  _____

---

[5]   ECAir confirms that "[t]he Aircraft is currently stored at Boeing's facility in Victorville. In June 2016, the Aircraft will be transferred to Hamburg, Germany to be retrofitted by Lufthansa Technik AG for ECAir's future use in commercial passenger service." (ECAir Opp'n at 2.")

[6]   We also note that the article Plaintiff submits from the website, www.congo-liberty.com, seems to suggest that the aircraft is intended to be used to transport the president of the Republic of Congo. (Dworkin Decl. ¶ 15, Exh. U.) Although this article has little to no evidentiary value here, assuming, arguendo, that this assertion is true, then it appears that the aircraft will not be used for a "commercial activity," as required by Section 1610(a). See Colella, 2007 WL 1545204, at *5-7.

E-FILED  -  **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV16-00656 GHK (SPx) | Date | April 21, 2016 |
|---|---|---|---|
| Title | *Commissions Import Export S.A. v. Republic of the Congo* | | |

Initials of Deputy Clerk          Bea